**Paulette DENDY et al., Plaintiffs,**

v.

**WASHINGTON HOSPITAL CENTER et al., Defendants.**

**Civ. A. No. 77–333.**

United States District Court,
District of Columbia.

May 18, 1977.

---

Anne Pilsbury, June D. W. Kalijarvi, Washington, D. C., for plaintiffs.

Peter W. Tredick and William T. Torgerson, Hogan & Hartson, Washington, D. C., for defendants.

## MEMORANDUM OPINION

SIRICA, District Judge.

Under a policy instituted in 1975, defendant Washington Hospital Center (WHC) began requiring employees in its Respiratory Therapy Department to pass a standardized examination administered by the National Board of Respiratory Therapy (NBRT) as a condition for keeping their positions as respiratory therapists, receiving promotions and preferential work assignments. According to the policy, if a respiratory therapist fails the examination once, no adverse action is taken. But if a therapist fails the exam twice, the WHC demotes the employee to the position of respiratory technician or, if no such position is available, the employee is discharged. This yet uncertified [1] class action was brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1970), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 (1970), for damages and an injunction preventing the WHC from continuing to use the NBRT examination as a condition of employment. The matter is presently before the Court having come on for hearing on plaintiffs' motion for a preliminary injunction.

The examination being challenged is prepared and administered by the NBRT, a body composed of respiratory therapists and physicians practicing in the field of respiratory care. It is given biannually and consists of both a written and an oral component. The written portion of the test consists of 200 multiple-choice questions covering a broad range of subjects dealing with medical science, respiratory therapy equipment and clinical procedures. Upon successful completion of the NBRT examination, a therapist qualifies as being "registered" and receives a credential attesting to success on the test.

Each of the plaintiffs was at one point employed full-time by the WHC in the position of respiratory therapist. Under the

1. The question of class certification raises a number of substantial legal questions. After research and, if necessary, hearing, the Court will resolve the issue in a separate memorandum.

policy instituted by the WHC in 1975, each was required to sit for the NBRT examination. Plaintiff Dendy twice failed the exam and was demoted to the position of respiratory technician. In spite of the fact that she overturned her demotion through union grievance procedures, Dendy subsequently left the WHC to obtain comparable employment elsewhere. Plaintiff Johnson was also demoted from respiratory therapist to respiratory technician as a consequence of failing the NBRT examination on two occasions. Unlike Dendy, however, Johnson remains employed by the WHC as a technician. Plaintiff Jones was hired by the WHC as a respiratory technician and subsequently gained promotion to the post of therapist despite the fact that she had earlier failed the NBRT test while employed elsewhere. When required by the WHC to sit for the 1976 NBRT exam or face termination, she resigned her position to accept comparable work in the respiratory care department of another hospital.

Each of the plaintiffs is black. The theory underlying their application for preliminary relief is that use of the NBRT examination violates Title VII in that the test results have impacted disproportionately on black WHC employees. In plaintiffs' view, this disproportionate impact, when considered together with the nature of plaintiffs' present injuries, the comparative hardships on the parties should a preliminary injunction issue, and considerations of the public interest, furnishes an adequate basis for enjoining use of the NBRT examination pending final disposition of the case on its merits. *Virginia Petroleum Jobbers Association v. F.P.C.*, 104 U.S.App.D.C. 106, 259 F.2d 921, 925 (1958).

■■ The governing principles of law are straight-forward. "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination."

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). To meet this threshold burden, the complainant need only show the discriminatory effect of the challenged employment practice, including "practices that are fair in form but discriminatory in operation." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). Statistical evidence standing alone affords an accepted basis for demonstrating discriminatory effect. *Davis v. Washington*, 168 U.S.App.D.C. 42, 512 F.2d 956, 958–59 (1975), rev'd on other grounds, 426 U.S 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Robinson v. City of Dallas*, 514 F.2d 1271, 1273 (5th Cir. 1975). Once a prima facie case of discrimination is presented, the burden shifts to the defendant to show that the discriminatory practice "bear[s] a demonstrable relationship to successful performance of the jobs" for which it is used. *Griggs, supra*, 401 U.S. at 431, 91 S.Ct. at 853; *Davis, supra*, 512 F.2d at 959.

■ In an effort to demonstrate the discriminatory effect of the NBRT test requirement, plaintiffs point to statistics canvassing the race of WHC employees who have, as required, taken the NBRT examination and their comparative success on it. These statistics indicate that during the period 1961 through 1975[2] some 35 employees sat for the test, 26 of whom were white, while the remaining 9 were black. These statistics further indicate that all 26 of the white employees who took the exam passed it, while only 4 of the 9 black employees did so. On the basis of these comparative results, plaintiffs bottom their contention that a prima facie showing of discriminatory effect is evident. This Court, however, disagrees.

In the context of Title VII suits, the phrases "prima facie case" and "discriminatory effect" are terms of art without specific meaning. Lacking any pretense of scien-

---

**2.** Because the Court finds that these statistics are unpersuasive, no view is expressed concerning the weight to be given data drawn from test results that were reported as long ago as 16 years from the date this suit was brought. However, in light of the broad purpose of Title VII to root out employment practices that work to exclude classes of employees by race, the Court is inclined to consider these results to be relevant even though they are based on events from distant years. This would change, however, on a showing that the content of the NBRT examination has changed meaningfully over the years.

tific exactness, they merely serve as guide-posts to assist in singling out employment practices for which it is appropriate to ask employers to offer justifications. The precise point at which statistical data casts sufficient suspicion on an employment practice to require explanation by the employer is not fixed by any rule of thumb. It will vary depending on the facts and circumstances of each particular case. In all instances, however, the statistical evidence offered to show prima facie discriminatory effect must be persuasive. This is particularly so where, as here, statistics are advanced to support the granting of extraordinary relief in the form of a preliminary injunction. This is also the case where, as here, the employment practice being challenged is related to the delivery of critical medical care to gravely ill patients.

To be persuasive, statistical evidence must rest on data large enough to mirror the reality of the employment situation. If, on the one hand, the courts were to ignore broadly based statistical data, that would be manifestly unfair to Title VII complainants. But if, on the other hand, the courts were to rely heavily on statistics drawn from narrow samples, that would inevitably upset legitimate employment practices for reasons of appearance rather than substance. The courts must be astute to safeguard both of these conflicting interests. *See generally* Note, *Employment Discrimination: Statistics and Preferences Under Title VII*, 59 Va.L.Rev. 462, 466 (1973).

In the instant matter, the Court is convinced that the data offered by plaintiffs represents too slender a reed on which to rest the weighty remedy of preliminary relief. To begin with, the entire sample on which plaintiffs base their prima facie showing consists of a total of 35 employees. With so meager a sample, if just a handful of test results had turned out differently,

the comparative percentages of black (44%) and white (100%) success on the exam would have been correspondingly, and substantially, different. In the Court's estimation, "Such small numbers are insufficient to support any conclusion as to whether the rule has a discriminatory effect." *Robinson, supra,* 514 F.2d at 1273.

*Chicano Police Officers Association v. Stover,* 526 F.2d 431 (10th Cir. 1975) is not to the contrary. Plaintiffs rely on *Stover* for the principle that "The smallness of the sample should not be grounds here for rejecting the proof." *Id.* at 439. But in *Stover,* in sharp numerical contrast to the instant case, the statistical evidence before the court reflected a sample many times greater and, hence, significantly more persuasive, than is present here. In light of this striking numerical disparity, *Stover* is plainly inapposite. Reliance on that case is similarly inappropriate in that there, unlike here, the challenged practice was a local test for which corroborating national statistics were not available.[3]

In rejecting as insufficient the statistical evidence presented by plaintiffs in support of their application for preliminary relief, no view whatsoever is expressed concerning the adequacy of these statistics to support an ultimate finding of discriminatory effect when the case is later resolved on the merits. If, as was pointed out during the hearing in this matter, discovery produces supplemental data[4] that buttresses the evidence already presented, the Court will give this data whatever consideration it deserves. For present purposes, however, the Court finds that the evidence now before it does not warrant the conclusion that plaintiffs will likely succeed on the merits. Accordingly, plaintiffs' motion for preliminary relief must be denied.

It is so ordered.

See *Douglas v. Hampton,* 168 U.S.App.D.C. 62, 512 F.2d 976, 981–83 (1975).

---

3. Nothing presently before the Court indicates whether or not national NBRT test results are compiled according to the race of persons who take the exam. But even if these results do not directly reflect test success along racial lines, it may well be that test success by race can be reliably approximated by sampling test results from hospital facilities whose employees are predominantly white and predominantly black.

4. In addition to national data cataloging success on the NBRT examination, see note 3 supra, discovery will likely produce test results indicating the success of WHC employees on the 1976 and 1977 NBRT examinations.