**Phillip H. GILES, Plaintiff,**

**v.**

**Paul N. CARLIN, Postmaster General of the United States Postal Service, Defendant.**

**Civ. No. 84CV3398DT.**

United States District Court, E.D. Michigan, S.D.

Aug. 13, 1986.

Morley Witus, Detroit, Mich., for plaintiff.

Patricia G. Blake, Asst. U.S. Atty., Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT, Chief Judge.

Plaintiff Phillip H. Giles brought this action pursuant to the Civil Rights Act of 1964, Title 42, United States Code § 2000e–16, *et seq.*, claiming that he was terminated from his job because of unlawful discriminatory employment practices by the defendant United States Postal Service. Before the Court is defendant's motion to dismiss or, in the alternative, for summary judgment. Defendant's motion will be construed as one for summary judgment since all relevant affidavits, exhibits and documents will be considered. Fed.R.Civ.P. 12(b). *Wright v. Holbrook*, 794 F.2d 1152 (6th Cir., 1986).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, — U.S. —, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The rules do not require that the movant support its motion with affidavit testimony. Rule 56(a) states that a party may move for summary judgment "with or without supporting affidavits." The Supreme Court has recently held that "we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* (emphasis in original).

The party opposing a motion for summary judgment is required by Rule 56(e) to "set forth specific facts showing that there is a genuine issue for trial," and it is well settled that he "may not rest upon the mere allegations or denials of his pleadings." *Anderson v. Liberty Lobby,* — U.S. —, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). In deciding a motion for summary judgment, the court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106 S.Ct. at 2512. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.*, 106 S.Ct. at 2511.

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be a *genuine* issue of *material* fact. [Emphasis in original].

*Id.*, 106 S.Ct. at 2510.

However, the trial court ought proceed with caution in granting summary judgment, and may deny summary judgment where there is reason to believe that the better course would be to proceed to a full trial. *Id.*, 106 S.Ct. at 2514. The authority of the court to take a case away from the jury is limited, with all doubts to be resolved in the non-movant's favor.

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The

evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.

*Id.*, 106 S.Ct. at 2513.

## I. FACTS

On January 28, 1982, the plaintiff, a black Postal Service employee, was allegedly observed by U.S. Postal Inspectors to be stealing jewelry from the U.S. Mails. On February 8, 1982, he was was fired from his job as a distribution clerk at the Detroit Bulk Mail Center effective February 18, 1982. In addition to his firing, the plaintiff was formally charged with the violation of a federal criminal statute prohibiting theft from the United States Mail, 18 U.S.C. § 1709. Plaintiff, represented by an attorney, agreed to one year of court supervision in lieu of a plea and trial on April 29, 1982.

Subsequently, plaintiff sought to challenge the factual basis of his discharge by filing a grievance under the collective bargaining agreement. The grievance was heard by an arbitrator on July 8, 1982. In October or November, 1982, while awaiting a decision on his grievance, the plaintiff learned that he was a potential victim of race discrimination. Specifically, he discovered that a similarly situated white co-worker was merely suspended, rather than fired, for "basically the same misconduct" that plaintiff had been charged with.

Shortly after learning of the Postal Service's allegedly discriminatory disciplinary practices, plaintiff claims to have contacted an Equal Employment Opportunity counselor, Mrs. Johnetta Lamb.[1] When the plaintiff told her that he was already seeking reinstatement through grievance arbitration, Lamb allegedly suggested that the plaintiff await the outcome of the pending arbitration prior to filing an EEOC complaint.[2] The arbitrator's decision affirming plaintiff's dismissal was rendered on February 11, 1983.

On March 3, 1983, plaintiff again contacted his EEO counselor and initiated an administrative complaint claiming that he had been discharged because of his race. Plaintiff's formal administrative complaint was filed on March 24, 1983. On June 23, 1983, the Postal Service issued a decision rejecting plaintiff's administrative complaint as untimely. The ground for rejection was that plaintiff had failed to initiate an administrative grievance within 30 days of the alleged discriminatory action as required by the applicable EEO regulation. 29 C.F.R. § 1613.214(a)(1)(i). Furthermore, the Postal Service, citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), held that plaintiff's appeal of his firing through the grievance-arbitration provisions of the labor agreement did not toll the running of the thirty (30) day period for purposes of his discrimination complaint.

Plaintiff then appealed the rejection of his administrative complaint to the Equal Employment Opportunity Commission's Office of Review and Appeals. On June 18, 1984, the EEOC issued its decision affirming the Postal Service's rejection of plaintiff's administrative complaint as untimely. A timely appeal to this Court followed.

On appeal, plaintiff concedes the untimeliness of his administrative complaint. Nevertheless, he asserts that his untimely filing should be excused for two reasons. First, plaintiff contends that his late filing should be excused because he was not aware of nor informed of the appropriate limitations period set forth in the EEO regulations. Second, plaintiff argues that he did not learn of the factual basis for his complaint until October or November, 1982,

---

1. The time at which plaintiff first contacted Mrs. Lamb, the EEO counselor, is hotly contested. He claims to have contacted the EEOC "shortly after" learning of the factual basis for his complaint around October or November of 1982. Defendant, however, asserts that plaintiff did not contact the counselor until March 3, 1983. Since all facts must be construed in the light most favorable to plaintiff for purposes of this motion, the Court will take plaintiff's assertions in his affidavit as true.

2. Defendant further denies the veracity of this allegation, but questions of credibility in countervailing affidavits are irrelevant for purposes of the instant motion.

and that thereafter, the EEO counselor suggested that he await the outcome of his then-pending grievance arbitration before lodging an administrative complaint. Since the plaintiff filed his complaint within 30 days of the arbitrator's decision, he claims that it was timely and that the Government is equitably estopped from relying on a technical application of the 30–day filing requirement. The Government responds that the thirty (30) day filing requirement of 29 C.F.R.(a)(1)(i) is jurisdictional in nature and not subject to waiver or equitable tolling.

## II. NATURE OF PROCEDURAL DEADLINES UNDER THE CIVIL RIGHTS ACT OF 1964

Section 717 of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e–16, *et seq.*, provides employees with a remedy for illegal discriminatory hiring practices committed by federal employers. Section 2000e–16(a) prohibits discrimination in federal employee personnel actions on the basis of race, color, religion, sex or national origin.[3] Section 2000e–16(c) permits an employee to file suit in the district court for violations of § 2000e–16(a). Before an aggrieved claimant may pursue his claim in the courts, however, administrative remedies made available by his own agency must be exhausted. *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Johnson v. Orr*, 747 F.2d 1352, 1357 (10th Cir.1984);

*Sims v. Heckler*, 725 F.2d 1143, 1144 (7th Cir.1984); *Woodard v. Lehman*, 717 F.2d 909, 914 (4th Cir.1983).[4]

As an integral part of the enforcement scheme, Congress directed the Equal Employment Opportunity Commission to formulate administrative regulations demarcating procedural channels for aggrieved claimants. 42 U.S.C. § 2000e–16(b). Regulations thereafter promulgated set forth specific time constraints on the filing of administrative complaints.[5] The agency may accept a discrimination complaint only if:

> The complainant brought to the attention of the Equal Employment Opportunity Counselor the matter causing him to believe he had been discriminated against within 30 calendar days of the date of that matter, or, if a personnel action, within 30 calendar days of its effective date.
>
> The complainant or his representative submitted his written complaint to an appropriate official within 15 calendar days of the date of his final interview with the Equal Opportunity Counselor.

29 C.F.R. § 1613.214(a)(1)(i) & (ii) (1985).

Plaintiff does not contest the fact that he failed to bring his discrimination complaint to the EEO counselor within 30 days of the allegedly unlawful discriminatory action taken against him. Rather he contends that the requirements of 29 C.F.R. § 1613.-214(a)(1)(i) & (ii) are subject to waiver

---

**3.** This section provides:
(a) All personnel actions affecting employees or applicants for employment ... in executive agencies (other than the General Accounting Office) as defined in section 105 of Title 5 ... and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–16(a).

**4.** As the Supreme Court stated in *Brown, supra,* "Section 717(c) permits an aggrieved employee to file a civil action in a federal district court to review his claim of employment discrimination. Attached to that right, however, are certain preconditions. Initially, the complainant

must seek relief in the agency that has allegedly discriminated against him. He then may seek further administrative review with the Civil Service Commission or, alternatively, he may, within 30 days of receipt of notice of the agency's final decision, file suit in federal district court without appealing to the Civil Service Commission." 425 U.S. at 832, 96 S.Ct. at 1967.

**5.** The Equal Employment Opportunity (EEO) regulations are found at 29 C.F.R. § 1613.201 *et seq.* (1985). The regulations recodify, without appreciable change, rules originally promulgated by the Civil Service Commission. 5 C.F.R. §§ 713.201 *et seq.* (1978). Regulatory enforcement was transferred by the President from the Civil Service Commission to the EEOC pursuant to 5 U.S.C. § 901 *et seq.* in 1978. 43 Fed.Reg. 19, 807 (1976), 92 Stat. 3781.

and/or equitable tolling based on the facts of this case. In response, the Government argues that these limits are jurisdictional in nature and not subject to waiver or equitable extension.

In discrimination suits against private employers, "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). *Zipes* found no evidence of Congressional intent that deadlines be adhered to strictly, and noted that a "technical reading would be particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." *Id.*, 455 U.S. at 397, 102 S.Ct. at 1134, citing *Love v. Pullman*, 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972). The court concluded:

> By holding compliance with the filing period to be not a jurisdictional prerequisite to filing a Title VII suit, but a requirement subject to waiver as well as tolling when equity so requires, we honor the remedial purpose of the legislation as a whole without negating the particular purpose of the filing requirement to give prompt notice to the employer.

*Id.*, 455 U.S. at 398, 102 S.Ct. at 1135. However, the Supreme Court has not decided whether the time limitations applicable to federal employees are jurisdictional, or, as with private sector employees, analogous to statutes of limitations.[6]

There is a split among the circuits, albeit one-sided, as to whether the 30–day period applicable to federal employees is jurisdictional or more akin to a statute of limitations. *See, Anno.* 57 A.L.R. Fed. 116. The minority position, occupied by the Seventh Circuit, holds that the 30–day regulation is a jurisdictional requirement. *Sims*

*v. Heckler*, 725 F.2d 1143 (7th Cir.1984). *Sims* declined to extend *Zipes* to cases involving a federal defendant, relying upon the principle of sovereign immunity. It held that the 30–day requirement was an explicit legislative waiver of sovereign immunity which must be strictly construed. *Sims*, 725 F.2d at 1145. *Accord, Eagle v. Regan*, 599 F.Supp. 38 (N.D.Oh.1984); *Woodward v. Lehman*, 530 F.Supp. 139 (D.S.C.1982).

An overwhelming majority of the circuits have rejected *Sims*, holding that the thirty-day period was analogous to a statute of limitations, thus subject to waiver, estoppel, and equitable tolling, even though the federal government was a defendant. *Henderson v. United States Veterans Administration*, 790 F.2d 436 (5th Cir.1986); *Zografov v. Veterans Administration Medical Center*, 779 F.2d 967 (4th Cir. 1985); *Brown v. Marsh*, 777 F.2d 8 (D.C. Cir.1985); *Cosgrove v. Bolger*, 775 F.2d 1078 (9th Cir.1985); *Miller v. Marsh*, 766 F.2d 490 (11th Cir.1985); *Martinez v. Orr*, 738 F.2d 1107 (10th Cir.1984); *accord, Royall v. United States Postal Service*, 624 F.Supp. 211 (E.D.N.Y.1985); *Andrews v. Orr*, 614 F.Supp. 689 (D.C.Ohio 1985). Following the reasoning of *Zipes*, these courts found no Congressional intent that these deadlines should be jurisdictional.

A review of the legislative history of the 1972 amendments extending coverage of Title VII to federal employees reveals an intent to give federal employees essentially the same rights as had been provided employees in the private sector. *Martinez*, 738 F.2d at 1110. The House Report states unequivocally:

> Accordingly, there can exist no justification for anything but a vigorous effort to accord Federal employees the same rights and impartial treatment which the law seeks to afford employees in the private sector.

---

6. The failure of the court to address this issue has been commented upon by some justices. *See, e.g., Cooper v. United States Postal Service,* — U.S. ——, 105 S.Ct. 2034, 85 L.Ed.2d 316 (1985) (White, J., dissenting from denial of

cert.); *Stuckett v. United States Postal Service,* — U.S. ——, 105 S.Ct. 274, 83 L.Ed.2d 210 (1984) (White, J., joined by Rehnquist, J., dissenting from denial of *cert.*)

H.R.Rep. No. 238, 92d Cong., 2d Sess. *reprinted in* 1972 U.S.Code Cong. & Ad. News 2137, 2158. Elsewhere, the House Report comments that current laws governing the private sector "do not permit industry and labor organizations to be the judges of their own conduct in the area of employment discrimination ... [and] ... [t]here is no reason why government agencies should not be treated similarly." *Id.* at 2159–60.

The 30–day limit was not a creature of Congress, instead being a regulation promulgated by the EEOC.[7] 42 U.S.C. § 2000e–16(b) authorized the EEOC to promulgate rules and regulations designed to effectuate the policies of Title VII. The 30–day filing requirement has been characterized as "merely an administrative procedural requirement." *Cooper v. Bell,* 628 F.2d 1208, 1213 (9th Cir.1980). The regulations themselves indicate the nonjurisdictional nature of the time limit by allowing extensions for what are essentially equitable reasons.

> The agency shall extend the time limits in this section: (i) when the complainant shows that he was not notified of the time limits and was not otherwise aware of them, or that he was prevented by circumstances beyond his control from submitting the matter within the time limits; or (ii) for other reasons considered sufficient by the agency.

29 C.F.R. § 1613.214(a)(4) (1985).[8] In sum, the weight of authority, a review of legislative history, and the regulations themselves all lead this court to conclude that the 30–day period set forth in 29 C.F.R. § 1613.214(a)(1)(i) (1985) is in the nature of a statute of limitations, and is not jurisdictional. What remains to be decided is under what conditions may this period be tolled and if the plaintiff has raised a sufficient issue of genuine fact at this stage of

the proceedings as to one of those conditions.

As a threshold inquiry, it is necessary to pinpoint the accrual date of plaintiff's cause of action. If plaintiff's cause of action accrued on February 18, 1982, the date of his termination, then his action is barred notwithstanding his estoppel argument since the alleged misrepresentation did not occur until around November, 1982—long after the 30–day administrative filing period expired. Alternatively, if plaintiff's cause of action accrued in November, 1982 —the approximate time at which he *discovered* the alleged illegal discrimination—the estoppel argument is relevent for purposes of inquiry into the tolling of the 30–day filing period.

■ A cause of action in discrimination cases does not accrue until the plaintiff, in the exercise of reasonable diligence, knew or should have known of the facts forming the basis of the complaint. *Wolfolk v. Rivera,* 729 F.2d 1114, 1117 (7th Cir.1984), *Oaxaca v. Roscoe,* 641 F.2d 386, 388–91 (5th Cir.1981); *Cooper v. Bell,* 628 F.2d 1208, 1212–14 (9th Cir.1980); *McKenzie v. Calloway,* 456 F.Supp. 590, 606 (E.D.Mi. 1978); *aff'd* 625 F.2d 754 (6th Cir.1980); *see, also, Adkins v. International Union of Electrical Radio & Machine Workers,* 769 F.2d 330, 335 (6th Cir.1985), *reh'g en banc denied,* 769 F.2d 330 (6th Cir.1985), (interpreting § 10(b) of the National Labor Relations Act as amended 29 U.S.C. § 160(b) ); *Sevier v. Turner,* 742 F.2d 262, 273 (6th Cir.1984) (interpreting 42 U.S.C. § 1983); *Modin v. New York Central Co.,* 650 F.2d 829, 834 (6th Cir.1981), *cert. denied,* 454 U.S. 967, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981) (interpreting § 16(3)(b) of the Interstate Commerce Act, 49 U.S.C. § 16(3)(b)). The affidavits submitted by counsel shed little light on when the plain-

---

**7.** This differs markedly from the period within which a federal employee must file her action in federal court, which is set forth by Congress itself explicitly in the statute. 42 U.S.C. § 2000e–16(c); *see, Cooper v. Bell,* 628 F.2d 1208, 1213 n. 10 (9th Cir.1980).

**8.** The regulations also encourage informal resolution of discrimination complaints, allowing time for the EEO counselor to resolve the dispute before it moves to the formal complaint stage. 29 C.F.R. § 1613.213(a). This is further evidence that the time limits contained in the regulations are meant to be flexibly interpreted.

tiff should have known of the alleged basis of illegal discrimination. Accordingly, the court finds there is a disputed issue of material fact on this issue, and will for the purposes of this motion assume that the plaintiff's cause of action accrued in October or November of 1982.

■ The first reason advanced by the plaintiff to excuse his late filing is that he was not aware of and not informed of the 30–day limitations period of § 1613.-214(a)(1)(i).[9] The defendant responds that posters advising employees of their rights under Title VII were prominently posted on the workroom floor and adjacent to the personnel office of the facility where the plaintiff worked. The posters, in very large and bold typeface, pose the question: "When must the problem be presented?" This is followed by an answer setting forth the thirty-day limitations period. Employees are also advised in bold typeface to contact their EEO counselor. The plaintiff does not deny the existence or location of the EEO posters, instead resting upon his bare allegation of lack of notice. Such a cursory response, bereft of any specific factual allegations, is clearly insufficient to oppose a well-supported summary judgment motion. *Anderson, supra.* Faced with such uncontradicted evidence, the court finds that there exists no genuine issue of material fact as to whether the plaintiff knew or should have known of the thirty-day limit, and that excuse for the late filing is rejected.

## III. ESTOPPING THE FEDERAL GOVERNMENT

■ Plaintiff's second contention is that the Government is equitably estopped from relying on plaintiff's non-compliance with § 1613.214(a)(1)(i) as a defense to his com-

plaint. The plaintiff alleges that he relied on the erroneous advice of a Government EEO counselor suggesting that he await the decision in his pending grievance arbitration before pursuing his administrative complaint. As a result, the plaintiff did not file his administrative complaint until after the arbitration decision was rendered, at which time the complaint was rejected as untimely. Consequently, plaintiff argues that the Government is equitably estopped from asserting untimeliness as a defense due to the Government's misconduct.[10] The question thus becomes whether the Government is or can be equitably estopped from asserting the 30–day requirement of § 1613.214(a)(1)(i) as a defense to plaintiff's administrative complaint.

Estoppel is an equitable doctrine invoked to avoid injustice in a particular case. The traditional elements of equitable estoppel have been summarized as follows:

1) The party to be estopped must know the facts;

2) He must intend that his conduct be acted on or must act so that the party asserting estoppel has a right to believe it is so intended;

3) The party asserting estoppel must be ignorant of the true facts; and

4) The party asserting estoppel must rely on the other party's conduct to his detriment.

*See,* J. Pomeroy, Equity Jurisprudence § 804 (5th Ed. Symons 1941). While the application of estoppel against private parties has a long history, a tradition of equal standing is that estoppel may not be invoked against the government. *See,* Note, Estopping the Government: Still Waiting for the Right Case, 53 *Geo.Wash.L.Rev.* 191 (1985); Note, Equitable Estoppel of the

---

**9.** The plaintiff failed to raise this defense at the agency level, even though 29 C.F.R. § 1613(a)(4)(i) allows the agency to extend the time limits if the complainant can show he was unaware or not notified of the limits. While such a failure to exhaust this remedy would ordinarily call for a remand to the agency level, *see, e.g., N. American Telecommunications Association v. F.C.C.,* 772 F.2d 1282 (7th Cir.1985); *American Maritime Association v. United States,*

766 F.2d 545, (D.C.Cir.1985); *Reid v. Engen,* 765 F.2d 1457 (9th Cir.1985), the facts of this dispute are so clear and so much time has passed, that a remand would be futile and judicial economy would not be served.

**10.** The plaintiff did raise this issue in the agency proceedings, thus exhausting his administrative remedies.

Government, 79 *Colum.L.Rev.* 551 (1979); *Anno.*, 27 A.L.R.Fed. 702.

The governmental exemption from estoppel has its origins, as does the doctrine of sovereign immunity, in the bromide that "the King can do no wrong." In modern times, reliance has been placed upon the constitutional doctrine of the separation of powers, along with the policy concern of protecting the public treasury. Courts are loath to allow the mistake of an uninformed or generous bureaucrat to result in the expenditure of funds held for the public good or the rewriting of laws enacted by Congress. In a landmark decision reflecting these twin concerns, Justice Frankfurter wrote that the unavailability of estoppel against the government "merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury." *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). These fears prevail to this day.

> Justification for this refusal rests primarily upon considerations of sovereign immunity and constitutional grounds— the potential for interference with the separation of governmental powers between the legislative and executive. There is also a vital concern for public policy. In a complex government with thousands of agencies and departments, and innumerable employees, there is a very real need to protect the Government against binding commitments by improper conduct of its agents, which might promote fraud or collusion. "Fear or uncontrollable liability and crippling losses to the public treasury have also played a role in sustaining the rule." [Citation omitted].

*Phelps v. Federal Emergency Management Agency*, 785 F.2d 13, 17 (1st Cir. 1986). In its most recent in-depth review of this issue, the Supreme Court said:

> Justice Holmes wrote: 'Men must turn square corners when they deal with the government.' *Rock Island, A. & L.R. Co. v. United States*, 254 U.S. 141, 143, [41 S.Ct. 55, 56, 65 L.Ed. 188] (1920). This observation has its greatest force

when a private party seeks to spend the Government's money. Protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law....

*Heckler v. Community Health Services*, 467 U.S. 51, 63, 104 S.Ct. 2218, 2225–26, 81 L.Ed.2d 42 (1983). Thus a party seeking to estop the government must not only prove the traditional elements of estoppel, but must also overcome the long tradition that this doctrine cannot be invoked against the government.

Despite this unbroken line of cases emphasizing the unavailability of estoppel against the government, the Supreme Court has declined to expand this principle into a flat rule that estoppel may not in any circumstances run against the government. *Heckler*, 467 U.S. at 51, 104 S.Ct. at 2219. The court said that "we are hesitant ... to say that there are *no cases* in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor and reliability in their dealings with their Government." *Id.*, 467 U.S. at 60–61, 104 S.Ct. at 2224 (emphasis in original). *Heckler* noted the dissent of Justice Jackson in *Merrill*, who said: "It is very well to say that those who deal with the Government should turn square corners. But there is no reason why the square corners should constitute a one-way street." *Id.*, 467 U.S. at 61 n. 13, 104 S.Ct. at 2224 n. 13, citing *Merrill*, 332 U.S. at 387–388, 68 S.Ct. at 4–5 (Jackson, J., dissenting).

In declining to announce a special rule on government estoppel, *Heckler* relied upon the traditional elements of estoppel to reject the private party's argument. In *Heckler*, the defendant, a state health service agency, wanted to know if grants received under the Comprehensive Employment and Training Act (CETA), 29 U.S.C. § 801 *et seq.* and repealed, Pub.L. 97–300, 96 Stat. 1357, should be offset against expenses submitted to Medicare for reim-

bursement. Administrative regulations prevented the defendant from making a direct inquiry to the Secretary of Health and Human Services (HHS), the proper channel of communications being a private insurance company acting as the Secretary's agent. The insurance company mistakenly informed the defendant, by oral communication, that an offset was not required. Subsequently, the Secretary instituted an action to recoup an offset amount equal to the CETA funds received by the defendant. The Supreme Court rejected the defendant's argument that the government should be estopped from attempting to recover the overpayment because of the representations of its agent that there would be no offset.

The court held that the defendant had no reason to rely upon the insurance company's representations concerning the law, and that even if reliance had been reasonable, the defendant had not suffered to its detriment. The court enumerated several factors to support its holding:

—the only detriment suffered by the defendant was its inability to retain money it should never have received in the first place.
—the insurance company was a private firm whose primary role was that of a fiscal intermediary.
—the defendant, as a participant in the Medicare program, had a duty to be familiar with the program, and also should have known that the fiscal intermediary could not resolve policy questions.
—the defendant relied upon oral representations in a program where the need for written records is manifest.

The court concluded: "[R]espondent prepared those reports on the basis of an oral policy judgment by an official who, it should have known, was not in the business of making policy. That is not the kind of reasonable reliance that would even give rise to an estoppel against a private party." *Heckler,* 467 U.S. at 66, 104 S.Ct. at 2227.

In an earlier case, the court refused to apply the estoppel doctrine in a case where a government employee's neglect resulted in a social security applicant's loss of twelve months of benefits. *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). In *Hansen,* the applicant orally inquired whether she was eligible for certain benefits. The government employee erroneously told her she was not eligible, and also failed to inform her that she ought file a written application, this failure to advise being a violation of the Claims Manual for employees.[11] The applicant filed a written application a year later upon learning she was eligible for benefits, and began receiving the benefit, plus the statutory maximum of twelve months of retroactive benefits. She brought suit, claiming she should receive an additional twelve months of benefits, from the date of her original "oral application." The court held that while it was not deciding what type of misconduct by a government employee would estop the government from insisting on compliance with valid regulations, the "minor breach" in this case was insufficient to estop the government. *Hansen,* 450 U.S. at 789, 101 S.Ct. at 1471. Without deciding, as some circuit courts have, that "affirmative misconduct" by a government employee may estop the government from insisting upon compliance with valid government regulations, the court found that in this case the employee's errors did not rise to the level of affirmative misconduct. *Hansen,* 450 U.S. at 788–789, 101 S.Ct. at 1471.

The court did not deny that the employee's advice concerning the availability of this particular benefit was erroneous, but found that whatever the reason for the error, it did not (or more realistically should not) induce reasonable reliance by the applicant.

**11.** The Social Security Act makes benefits available only to those who have filed applications, 42 U.S.C. § 402(g)(1)(D). The Social Security Administration has promulgated a regulation stating that only a written application satisfied this requirement. 20 C.F.R. § 404.601 (1974).

Connelly erred in telling respondent that she was ineligible for the benefit she sought. It may be that Connelly erred because he was unfamiliar with a recent amendment which afforded benefits to respondent. *Id.*, [*Hansen v. Harris*, 619 F.2d 942] at 947. [2nd Cir.1980] Or it may be that respondent gave Connelly too little information for him to know that he was in error. *Id.*, at 955. (Friendly, J., dissenting). But at worst, Connelly's conduct did not cause respondent to take action, cf. *Federal Crop Insurance Corp. v. Merrill, supra,* or fail to take action, cf. *Montana v. Kennedy,* [366 U.S. 308, 81 S.Ct. 1336, 6 L.Ed.2d 313] *supra,* that respondent could not correct at any time.

*Id.*, 450 U.S. at 789, 101 S.Ct. at 1471. That is, the applicant could, as she eventually did, file a written application for benefits, which was the procedure she should have initially followed to determine if she was qualified. As to the failure to recommend that such an application should be filed, the court said that this rule was contained in the Claims Manual, which was not even a regulation. Pointing out that this was a 13-volume set that did not even have the force of the law, the court once again expressed its concern over the effect on Congressional programs if such errors could estop the government:

> If Connelly's minor breach of such a manual suffices to estop petitioner, then the Government is put 'at risk that every alleged failure by an agent to follow instructions to the last detail in one of a thousand cases will deprive it of the benefit of the written application requirement which experience has taught to be essential to the honest and effective administration of the Social Security Laws.' [Citation omitted.]

*Id.*, 450 U.S. at 789–790, 101 S.Ct. at 1471–72. In distinguishing several circuit court cases that have applied estoppel against the government cited by Justice Marshall in his dissent, the court noted that those cases involved either written agreements which supported the estoppel claims, or cases where application of the doctrine did not threaten the public fisc, as it did in *Hansen. Id.*, 450 U.S. at 788, n. 4, 101 S.Ct. at 1471 n. 4.

Despite the Supreme Court's clear animosity toward the doctrine, and probably in part because of the absence of clear guidance from the highest court, some courts have begun to invoke estoppel against the government in limited circumstances. *See, Anno.,* 27 A.L.R. Fed. 702. The Ninth Circuit has established a three-part test to determine if the government may be estopped. *JAA v. United States I.N.S.,* 779 F.2d 569 (9th Cir.1986). First, the traditional elements of estoppel must be established. Second, the government's actions must have amounted to affirmative misconduct, which is defined as something more than negligence. *JAA,* 779 F.2d at 572. Third, affirmative misconduct will not estop the government unless "the government's wrongful conduct threatened to work a serious injustice and ... the public's interest would not be unduly damaged by the imposition of estoppel." *Id.* The Seventh Circuit has held that along with affirmative misconduct, factors which should be taken into consideration before estopping the government include:

—the type of government activity being pursued;

—the reasonableness of the plaintiff's reliance;

—the potential danger of undermining important federal interests; and

—the risk of a severe depletion of the public fisc.

*Portmann v. United States,* 674 F.2d 1155, 1167 (7th Cir.1982).

The "affirmative misconduct" standard has been adopted by other circuits as well. *Lurch v. United States,* 719 F.2d 333 (10th Cir.1983); *Free Enterprise Canoe Renters Ass'n. v. Watt,* 711 F.2d 852 (8th Cir.1983). Other circuits have held that the government may be estopped in particular cases, without articulating a specific standard. *Moody v. United States,* 783 F.2d 1244 (5th Cir.1986); *Lyden v. Howerton,* 783 F.2d 1554 (11th Cir.1986); *American Electronic*

*Laboratories v. United States*, 774 F.2d 1110 (Fed.Cir.1985); *G.A.O. v. G.A.O. Personnel App. Bd.*, 698 F.2d 516 (D.C.Cir. 1983). The Sixth Circuit, while reciting the rule that estoppel is generally not available against the government, appears to have embraced the "affirmative misconduct" standard. *Housing Auth. of Elliot County v. Bergland*, 749 F.2d 1184, 1190 (6th Cir.1984).

Returning to the issue in this case, under what circumstances may the 30–day time limit be tolled so as to estop the government from raising it as a defense, courts that have held that the time limits are not jurisdictional have usually not considered the issue in light of the problems discussed above.[12] These courts have instead imported the standards from employment discrimination cases involving private employers into the federal context. However, this does not appear to have resulted in a lower standard than that applied in government estoppel cases generally. Thus it has been held that equity may toll the time limits where an employee has been "actively misled," or has been lulled into inaction or into pursuing other channels at the expense of his federal court remedy. *Miller v. Marsh*, 766 F.2d 490, 493 (11th Cir.1985); *Martinez v. Orr*, 738 F.2d 1107, 1110 (10th Cir.1984). This seems to coincide with the "affirmative misconduct" standard set forth in the cases dealing explicitly with the issue of applying estoppel to the government.

The court finds the recent caselaw relaxing the traditional bar on invoking estoppel against the government persuasive. Accordingly, it will first determine if the plaintiff has satisfied the traditional elements of estoppel. Then it will decide whether any genuine issue of material fact exists as to whether the government engaged in any affirmative misconduct which "lulled" the plaintiff into pursuing his un-

ion grievance before filing his EEOC complaint. Finally, the court will weigh the equities of this case, applying the factors set forth by the Seventh and Ninth Courts, to determine if this is an appropriate case in which to apply the doctrine of estoppel against the government. This being a summary judgment motion, the court repeats that it is constrained to believe the evidence of the nonmovant, and all justifiable inferences are to be drawn in his favor, as this is neither the time nor the forum for determination of credibility: that will occur at trial. *Anderson*, 106 S.Ct. at 2513.

■ Construing the facts in the light most favorable to the plaintiff, the court assumes that he did not pursue his administrative remedies in a timely fashion due to the alleged erroneous advice of Ms. Lamb, the EEO counselor, recommending that he await the outcome of his arbitration grievance before pressing forward with his administrative complaint. If true, the court believes that these facts would support a finding of reasonable and detrimental reliance if this action were being brought against a private party. Unlike the defendant in *Heckler*, the plaintiff in this case is a layperson, with no particular reason to be familiar with the procedural intricacies of Title VII. Unlike *Heckler*, where the advice was received from a private insurance company which was obviously not authorized to make government policy decisions, Ms. Lamb is a government employee whose very title, EEO counselor, makes it equally obvious that it is her primary function to guide federal employees through the oft-confusing steps of a discrimination complaint. *See*, 29 C.F.R. § 1613.213(a) (1985). Nor was her advice unreasonable on its face. It is neither common knowledge nor common sense to think that the union grievance procedure is irrelevant to an alle-

12. The Seventh Circuit, which held the time limits to be jurisdictional, observed in *dicta* that the characterization of the deadlines would usually be of little consequence because of the difficulty of invoking estoppel against the government. *Sims,* 725 F.2d at 1146. This observation raises the question of whether it

makes any sense to first hold that the deadlines are not jurisdictional, then proceed to bar the plaintiff from invoking most of the grounds of equitable relief from statutes of limitation which are commonly available on the basis that such equitable relief cannot be invoked against the government.

gation of discrimination, especially when one is advised by a perceived expert that one follows the other.[13] If the plaintiff had prevailed in this union grievance, he would have in all likelihood been reinstated and his discrimination claim would have been for the most part moot. There is also no question that the plaintiff relied to his detriment on the advice of Ms. Lamb: he potentially lost any opportunity to have his discrimination complaint heard either administratively or in court. The plaintiff has enough factual support at this stage of the litigation to meet the traditional elements of estoppel.

The court cannot deal extensively with whether Ms. Lamb's allegedly erroneous advice constituted "affirmative misconduct." The court has before it two rather conclusory affidavits, one asserting that the exchange occurred, the other denying that the call was ever received. Ms. Lamb's conduct, if the plaintiff's version of the facts is true, consisted of more than "mere oversight" by a government employee, *Sims, supra,* nor is this a case where the government merely failed to adequately publicize certain information. *See, e.g., I.N.S. v. Hibi,* 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973). Given that one of the central functions of an EEO counselor is to advise employees on matters of procedure, it is not inconceivable that a major error such as the one alleged by the plaintiff could be characterized as affirmative misconduct. This situation differs markedly from *Hansen, supra,* where the applicant made an oral inquiry concerning eligibility, instead of filing a written application, and the failure of the employee to so advise her to file such an application was in violation of a rule in a 13–volume manual that was not even a regulation. In this case, the plaintiff's initial oral inquiry to Ms. Lamb

was mandatory. "An agency shall require that an aggrieved person who believes that he or she has been discriminated against ... consult with an Equal Employment Opportunity Counselor to try to resolve the matter." 29 C.F.R. §§ 1613.213(a) (1985). The counselor is directed to "counsel the aggrieved person concerning issues in the matter." *Id.*[14] Further, the counselor is required to give the complainant *written notice* of his right to file a complaint and the relevant deadlines. *Id.* Thus the plaintiff could not file his formal complaint until he had consulted with Ms. Lamb, and the failure to thereafter give him written notice of his rights is a violation of a regulation, not an informal rule.[15] However, given the paucity of the evidence before the court, it would be speculative to rule as a matter of law at this point whether Ms. Lamb's conduct rose to such a level as to work an estoppel on the government.

Even if there were affirmative misconduct, the court must determine if this is an appropriate case in which to invoke estoppel against the government. This determination is essentially a balance between the degree of injustice suffered by the plaintiff and the potential harm to important governmental interests and the public fisc if estoppel is invoked. The injustice visited upon the plaintiff is clear: his discrimination claim might not ever be litigated. This is not a government error which can be corrected at a later time. *Hansen, supra.* On the potential harm to the government side of the equation, a distinguishing characteristic of this case is its minimal danger to the public fisc. This is not a government benefits case. Unlike *Heckler,* the plaintiff is not attempting to estop the government from recovering public moneys erroneously disbursed. Nor is this case similar to *Hansen,* where the court was

13. The EEO posters do not warn employees that pursuing the union grievance route does not toll the Title VII time limits.

14. The EEO posters informing federal employees of their rights under Title VII state that the initial complaint to the EEO counselor may be presented orally.

15. This regulation, which is the source of the EEO counselor's duties, barely occupies a single column of one page of the Code of Federal Regulations, thus not raising the issue present in *Hansen* of the government being estopped by the failure of an employee to know every informal rule in a 13–volume manual.

concerned that permitting oral questions to substitute for written applications would endanger the orderly functioning of the social security system, increasing the possibility of fraudulent claims. There is no such threat in the instant case. This is a job discrimination case in which the essential relief sought is reinstatement.[16] Permitting federal employees to rely upon representations made by EEO counselors poses no threat of fraudulent raids on the public treasury.

Far from endangering important governmental interests, the court finds that the invocation of estoppel in federal employment discrimination cases furthers Congressional policy. When Title VII was amended in 1972 to include coverage of federal employees, the House said: "[the] disproportionate distribution of minorities and women throughout the Federal bureaucracy and their exclusion from higher level policy making and supervisory positions indicates the government's failure to pursue its policy of equal opportunity." H.R.Rep. No. 238, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad. News 2137, 2158. The report notes that "a critical defect of the Federal equal opportunity program has been the failure of the complaint process" and that "to correct this entrenched discrimination in the Federal service, it is necessary to insure the effective application of uniform, fair and strongly enforced policies." *Id.* at 2158 and 2159. Congress emphasized the importance of equal opportunity in federal employment.

> The federal service is an area where equal employment opportunity is of paramount significance. Americans rely upon the maxim 'government of the people,' and traditionally measure the quality of their democracy on the opportunity they have to participate in governmental processes. It is, therefore, imperative that equal opportunity be the touchstone of the Federal system.

Id. at 2157. Not only did Congress intend to give federal employees rights equal to those available to workers in the private sector, it said that "government should itself set the example" in providing equal opportunity. *Id.* at 2160.

In the face of such clear Congressional intent that equal opportunity in federal employment is an extremely important goal, the court concludes that estopping the government in cases such as the one *sub judice* promotes rather than threatens important government policies. The House Report states that testimony "reflected a general lack of confidence in the effectiveness of the complaint procedure ..." and that "complainants were skeptical of the Civil Service Commission's record in obtaining ... adequate remedies." *Id.* at 2159. It concludes that this perception had "discouraged" persons from filing complaints. *Id.* If courts send a message that federal employees cannot rely upon the advice of the counselor who is charged with assisting them in protecting their rights, the lack of confidence and skepticism which Congress was seeking to eradicte would surely reappear.

## IV. CONCLUSION

To review, the court finds the time limits expressed in 29 C.F.R. § 1613.214 to be analogous to statutes of limitation subject to waiver, estoppel and equitable tolling. The court further holds that where a plaintiff has missed these deadlines due to the affirmative misconduct of an EEO counselor charged with the duty of giving a complainant written notice of these deadlines, the government may be estopped from raising failure to comply with these limits as a defense. In reviewing the facts before it, the court finds that it is unable to summarily determine whether there was affirmative misconduct sufficient to estop the government, and that a genuine issue of material fact exists as to this element of the estoppel theory raised by the plaintiff. The

---

**16.** The plaintiff does request back pay, but would, of course, be entitled to this relief only if

he prevailed on the reinstatement claim.

disputed factual issues also include the accrual date of the plaintiff's cause of action, whether he called the EEO counselor in the fall of 1982, and if this call did occur, what was said in it. Accordingly, the defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.