John J.B. JONES, an individual, Plaintiff,

v.

BASKIN, FLAHERTY, ELLIOT AND MANNINO, P.C.; Philip Baskin, an individual; Raymond N. Baum, an individual; James B. Brown, an individual; Victor R. Delle Donne, an individual; Robert E. Fiorito, an individual; James J. Flaherty, an individual; Linda L. Goldston, an individual; Kenneth E. Lewis, an individual; R. Darryl Ponton, an individual; and Charles E. Wittlin, an individual, Defendants.

Civ. A. No. 86-2533.

United States District Court, W.D. Pennsylvania.

April 11, 1989.

John J.B. Jones, Pittsburgh, Pa., for plaintiff.

Carl H. Hellerstedt, Jr., Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

MENCER, District Judge.

This pro se action by the plaintiff, John J.B. Jones, alleges that his dismissal as an attorney from the law firm of Baskin Flaherty Elliot and Mannino, P.C. (BFEM) on March 31, 1985 violated the Age Discrimination in Employment Act (ADEA) and the Employee Retirement Income Security Act

of 1974 (ERISA). The defendants have filed a motion for summary judgment with respect to the ADEA count, the ADEA conspiracy count, and the ERISA count. The defendants' motion is presently before this court.

### Legal Analysis

This court has already summarized the facts of this case in its opinion issued in September, 1987, 670 F.Supp. 597, and we will not repeat that summary here. We will begin our analysis by considering the defendants' claim that Jones's ADEA claim is time barred.

### ADEA Count

In Count I, Jones asserts a cause of action under the ADEA. The defendants claim that Jones failed to satisfy the procedural prerequisite of the ADEA that the plaintiff file administrative charges within the prescribed time limits.

Section 626(d) of Title 29 sets the time limits for filing an ADEA action in federal court:

> No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such charge shall be filed—
>
> (1) within 180 days after the alleged unlawful practice occurred; or,
>
> (2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

29 U.S.C. § 626(d). Section 633(b) provides that:

> In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under State law, unless such proceedings have been earlier terminated.

29 U.S.C. § 633(b).

Thus, the U.S.C. establishes two different limitation periods depending upon whether the state has anti-discriminatory laws that apply to the claimant. In the absence of a state law addressing discrimination, the plaintiff has 180 days to file his charge with the EEOC. 29 U.S.C. § 626(d)(1). If the state does have anti-discriminatory laws, then the plaintiff has an obligation to pursue his remedies under that law, and obtains additional time to file his charges. 29 U.S.C. § 626(d)(2); *Oscar Meyer & Co. v. Evans*, 441 U.S. 750, 753, 99 S.Ct. 2066, 2070, 60 L.Ed.2d 609 (1979). In such a state, the plaintiff must file both the EEOC charge and the state charge within 300 days in order to preserve his federal cause of action, regardless of any state statute of limitations. *Equal Employment Opportunity Comm'n v. Commercial Office Products Co.*, 486 U.S. 107, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988). *Oscar Meyer & Co. v. Evans*, 441 U.S. 750, 753, 99 S.Ct. 2066, 2070, 60 L.Ed.2d 609 (1979).

Pennsylvania has an authority whose function includes "prohibiting discrimination in employment because of age," namely the Pennsylvania Human Relations Commission (PHRC). Thus, § 633 applies to this case, and Jones must have filed an action before both the PHRC and the EEOC within 300 days of the alleged discriminatory acts in order to bring this action in federal court. *Kocian v. Getty Refining & Marketing Co.*, 707 F.2d 748, 751 (3d Cir.), *cert. denied*, 464 U.S. 852, 104 S.Ct. 164, 78 L.Ed.2d 150 (1983). *Oscar Meyer & Co. v. Evans*, 441 U.S. 750, 753, 99 S.Ct. 2066, 2070, 60 L.Ed.2d 609 (1979).

Jones argues that his Complaint was timely for several reasons. First, he argues that the December 4, 1984 notice to him of his discharge was procedurally defective. He asserts that the executive committee that made the decision to discharge him was not authorized by the corporate minutes, and thus was "merely ad hoc and had no official corporate status." There-

fore, he argues, its acts did not constitute official notice. Similarly, he argues that the Shareholder and Employment Agreement requires sixty days written notice and ratification by eighty percent of the board of directors before termination. Jones asserts that he did not receive written notice and that the board never voted on his termination, and implies that these procedural defects render the notice ineffective.

This court finds Jones's arguments about the technical deficiencies of his notice unavailing. On December 4, 1984, Jones received unequivocal notice that his employment was to terminate on March 31, 1985. The fact that he subsequently discovered procedural defects in that notice does not accord him the right to claim that he was not aware that he was being discriminated against. Jones did not cite any cases supporting the proposition that such technical defects in the notice would toll the statute of limitations, and this court did not discover any authority for that proposition in its research. Therefore, we find that the statutory periods began to run on December 4, 1984.

█ Second, Jones argues that his complaint was timely even if the court uses December 4 as the date of notice. The essence of Jones's argument is that the EEOC and the PHRC were parties to a worksharing agreement under which each organization designated the other as an authorized agent for the purposes of receiving charges. Furthermore, under the contract, the EEOC agreed to refer all age complaints to the PHRC on a weekly basis.

Jones filed his charges with the EEOC 280 days after the December 4 notice. Therefore, he argues, the court should presume that the EEOC forwarded the charges to the PHRC within one week. The charges would thus have been before the PHRC by the 287th day, and his complaint is timely. Even if the EEOC did not forward the charges, Jones argues, he should not be penalized by the EEOC's failure to follow its regulations.

We agree that, under some circumstances, it would be unjust to preclude Jones's claim based on the omission of the EEOC.

For example, in *Seredinski v. Clifton Precision Products Co.*, 776 F.2d 56 (3d Cir. 1985), the plaintiff filed a charge with the EEOC 280 days after the alleged discrimination. It was unclear from the record whether the EEOC referred the charges to the PHRC, but the court assumed that it had because, "[w]e have previously made it clear that the failure of EEOC to follow its regulations and refer charges to an appropriate state agency for filing will not deprive complainants of their right to proceed before the EEOC." *Id.* at 61, n. 7. *See also Gabrielle v. Barrett, Haentjens & Co.*, 663 F.Supp. 1187, 1191–92 (M.D.Pa. 1986) (protecting the plaintiff from the EEOC's inaction because he was pro se).

The mere fact that Jones filed with the EEOC within the 300 day limitation, however, is not sufficient to preserve his right to sue in federal court. In *Jackson v. Savin Corp.*, 43 F.E.P. Cases 1575, 1987 WL 17007 (D.N.J.1987), the plaintiff filed a charge with the EEOC 297 days after the alleged discriminatory act. The EEOC forwarded a letter to the PHRC on day 309. The court expressed uncertainty about whether the letter constituted an actual filing with the PHRC, but held that even if it were a filing, it was untimely. *Id.* at 1577. The court held that Congress's intent to limit federal jurisdiction over discrimination claims would be undermined if the courts did not adhere to the 300 day limitation strictly. *Id.* The court did not address the EEOC's responsibility or lack thereof for referring the charges to the PHRC.

Several courts have addressed the effects of allegedly misleading or false information provided by an EEOC representative. In *Schier v. Temple University*, 576 F.Supp. 1569 (E.D.Pa.), *aff'd and remanded*, 742 F.2d 94 (3d Cir.1984), *cert. denied*, 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985), the court considered an argument by the plaintiff that she filed her charge with the EEOC late because they had told her on the phone that she had 300 days when, in fact, she did not. The court refused to apply the equitable tolling doctrines because, as a former employee of an

employment office, she had "more than average knowledge about the operating of anti-discrimination laws." *Id.* at 1572. Furthermore, she had retained counsel before she filed her EEOC charge. *Id. See also Hamel v. Prudential Ins. Co.,* 640 F.Supp. 103, 105 (D.Mass.1986) (equitable tolling not available where EEOC failed to process intake questionnaire in a timely fashion because the plaintiff was represented by counsel); *Keyse v. California Texas Oil Corp.,* 590 F.2d 45 (2d Cir.1978) (allegations of misinformation from an EEOC employee and from the plaintiff's attorney do not excuse failure to file timely charges with the EEOC when plaintiff was represented by counsel).

Conversely, in *Giles v. Carlin,* 641 F.Supp. 629 (E.D.Mich.1986), the plaintiff alleged that an EEOC counselor advised him to wait until his pending grievance was decided before filing charges with the EEOC. The court held that reliance by an unrepresented layperson on the advice of an EEOC counselor was a reasonable excuse for failing to file within the limitation period. *Id.* at 641. *See also Dartt v. Shell Oil Co.,* 539 F.2d 1256 (10th Cir.1976), *aff'd,* 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977).

The facts of this case present an interesting blend of equitable considerations. In many of the cases that we examined, the court relied on the fact that the plaintiff was a pro se litigant in finding that he was entitled to protection from the EEOC's inaction or misinformation. In this case, Jones was not represented by an attorney when he filed his charges, but he is himself an attorney. Furthermore, he explicitly instructed the EEOC representative not to refer the charges to the PHRC. One could argue that this case is not one of omission by the EEOC, but rather a case of the EEOC obeying the explicit instructions of an attorney.

On the other hand, this is not the straightforward scenario presented in *Jackson* either. The plaintiff in *Jackson* filed his complaint so near the 300 day limitation that normal operating procedures may not have resulted in the charges reaching the PHRC in a timely manner. Jones filed his charge at the EEOC on day 280. The agreement provides that the EEOC will forward all charges to the PHRC within one week. Therefore, under normal circumstances, the PHRC would have received the charges by day 288 at the latest. One could argue that Jones's instructions to the EEOC representative not to forward the charges to the PHRC were directly elicited by the representative's question to Jones as to whether he would prefer that the EEOC or the PHRC investigate his claim. If Jones was misled by the EEOC representative, it may be inequitable to preclude his claim.

After reviewing the facts in this case, this court finds that Jones did not satisfy the prerequisites for bringing an age discrimination action in federal court. The EEOC seems never to have referred his charge to the PHRC, and presentation of his charge to the PHRC is unquestionably a precondition to suit in this court. Were Jones not an attorney who explicitly told the EEOC representative not to refer his charge to the PHRC, we would probably presume that the EEOC had followed its agreement with the PHRC and referred the charge, and we would not penalize him if the EEOC failed to do so. However, his status as an attorney places him on a par with plaintiffs who are represented by counsel, and the case law clearly places a high duty of vigilance on such plaintiffs. Therefore, we find that Jones's ADEA claim is not timely, and we will dismiss Count I.

*ADEA Conspiracy Count*

█ In Count II, Jones alleges that various individual members of the law firm conspired to violate the ADEA. The defendants have moved for summary judgment on Count II, arguing that conspiracy to violate the ADEA is not a viable claim and that the officers or employees of a corporation cannot be liable for conspiracy for a corporate act, except under limited circumstances not present in this case.

The leading Supreme Court case in this area of the law is *Great American Federal S. & L. Ass'n v. Novotny,* 442 U.S. 366, 99

S.Ct. 2345, 60 L.Ed.2d 957 (1979). In *Novotny*, the Court considered the viability of a cause of action for a conspiracy to violate Title VII of the Civil Rights Act, 42 U.S.C. § 2000e. The Court found that such an action does not exist. Title VII has many damages limitations and procedural requirements. If a plaintiff could assert a Title VII violation through a conspiracy claim under 42 U.S.C. § 1985(3), then he "could avoid most, if not all of these detailed and specific provisions of the law." *Id.* at 375–76, 99 S.Ct. at 2350–51. The Court concluded that "[u]nimpaired effectiveness can be given to the plan put together by Congress in Title VII only by holding that deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(c)." *Id.* at 378, 99 S.Ct. at 2352.

Although the Court did not refer to the ADEA in *Novotny*, the logic in that case applies equally well to the ADEA. The Court has held that language from the ADEA "was patterned after and is virtually in haec verba with" language from Title VII. *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 755, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979). Furthermore, lower courts addressing the issue have extended the *Novotny* rule to the ADEA. In *Golden v. Shapell Industries*, 24 FEP Cases 1283 (N.D.Cal.1980), the court wrote:

> The ADEA and Title VII each set forth procedures for vindication of the statutory rights. The procedural provisions of the two acts are similar, and both mandate administrative conciliation efforts. It would be incongruous to hold that an ADEA claim can be pursued under § 1985(3), when such a claim is barred for rights protected by Title VII. The policies and intent behind the statutes are related, and the limitation imposed by Novotny must apply in each instance.

*Id.* at 1285. *See also Moorhouse v. Boeing Co.*, 501 F.Supp. 390, 394 (E.D.Pa.1980), *aff'd*, 639 F.2d 774 (3d Cir.1981); *Davis v. Southeastern Community College*, 424 F.Supp. 1341 (1976), *vacated in part on other grounds*, 574 F.2d 1158 (1978); *Pavlo v. Stiefel Laboratories, Inc.*, 22 FEP Cases 489, 496–97 (S.D.N.Y.1979) (allowing the conspiracy count only because the plaintiff was only 35 years old, and, thus, not within the protected class under the ADEA).

We conclude, therefore, that the facts of this case do not present a claim for conspiracy to violate the ADEA, and we will grant the defendants' motion for summary judgment on Count II. We will not consider the defendants' alternative basis for summary judgment, their assertion that the facts of this case do not constitute a conspiracy among corporate officers, except to note that it also seems to be a valid defense to Count II.

*ERISA Count*

In Count V, Jones asserts a cause of action under ERISA. Essentially, he alleges that the law firm and Philip Baskin breached their fiduciary duty by investing in Israel Bonds and by mismanaging the fund so as to obtain a poor return on the investments. The defendants argue that Jones has failed to support his claim with any specific factual allegations.

The defendants primarily rely on *American Communications Ass'n v. Retirement Plan for Employees of RCA Corp.*, 488 F.Supp. 479 (S.D.N.Y.), *aff'd mem.*, 646 F.2d 559 (2d Cir.1980). In that case, the plaintiff alleged that the assets were "imprudently invested so as to provide a lower return or yield than could have been obtained by the exercise of prudence." *Id.* at 482. The court found that the plaintiff had failed to support his claim with any specific allegations of imprudence, and had relied on general conclusory allegations. *Id.* at 483. The court wrote that:

> The standard to be applied is that of conduct, tested at the time of the investment decision, rather than performance, judged from the vantage point of hindsight. The complaint contains no factual specification of any act the trustees took or failed to take that resulted in the lower rate of return alleged by plaintiffs. Plaintiffs have not alleged a single act of commission or omission to indicate that the trustees were derelict in the dis-

charge of their fiduciary duties or in what respect it is charged that the trustees failed to discharge those duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims."

*Id.* (footnotes omitted). *See also Metzner v. D.H. Blair & Co., Inc.*, 663 F.Supp. 716, 720 (S.D.N.Y.1987); *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984).

We find a similar lack of specific factual allegations of misconduct by Jones. His only allegations were that he is not Jewish so he would prefer investments other than Israel bonds and that he would have obtained a higher rate of return in a savings account. Clearly, his personal feelings about investments in Israel bonds do not render the fiduciary's actions unreasonable. Similarly, retrospectively developing an investment strategy that would have yielded a higher rate of return does not prove that the fiduciary's strategy was unreasonable at the time he was acting. Jones's statement in his deposition that he was not prepared to identify specific improper investments because he intended to develop them at trial cannot save his insufficient pleadings. Therefore, we find that Jones has not supported his claim of breach of the fiduciary duty, and we will grant summary judgment on Count V.

### ORDER

AND NOW, this 11th day of April, 1989, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Defendants' Motion for Summary Judgment is GRANTED and judgment is entered in favor of the Defendants and against the Plaintiff on Count I, Count II, and Count V of the Complaint.